DELORES G. SINOTTE ET AL. *v.* CITY
OF WATERBURY
(AC 30304)

Flynn, C. J., and Robinson and Mihalakos, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

421

Argued September 17, 2009—officially released June 1, 2010

*Justin J. Donnelly*, assistant corporation counsel, for the appellant-appellee (defendant).

*Erskine D. McIntosh,* for the appellees-appellants (plaintiffs).

FLYNN, C. J. The defendant, the city of Waterbury, appeals, and the plaintiffs, Delores G. Sinotte and Brian G. Sinotte, cross appeal from the judgment of the trial court in favor of the plaintiffs, finding that the defendant had created a permanent private nuisance by way of its maintenance of a sewer line connected to the plaintiffs' home. On appeal, the defendant claims that the court improperly determined that the plaintiffs' private nuisance claim was not barred by the applicable statute of limitations. In their cross appeal, the plaintiffs challenge the court's denial of their inverse condemnation, public nuisance, negligence, trespass and negligent infliction of emotional distress claims. We agree with the defendant that the plaintiffs' private nuisance claim was barred by the statute of limitations, and we conclude that the plaintiffs' claims are without merit. We therefore reverse in part and affirm in part the judgment of the trial court.

The record contains the following relevant facts and procedural history. The court issued two memoranda of decision in this case. The first was filed March 10, 2008, following trial. The court filed a second memorandum of decision on August 22, 2008, addressing the plaintiffs' motion for reconsideration. In chronicling the facts and history underlying these appeals, we draw from both memoranda. The plaintiffs purchased their home, located at 82 Old Colony Drive in Waterbury, in October, 1971. The residence is a single-family, ranch style home, which includes a finished basement consisting of a family room, laundry room and a bathroom. The home is serviced by the defendant's sanitary sewer system; it has an eight inch lateral sewer line connected to the defendant's fifteen inch gravity run clay sewer

line, which was constructed in the 1920s and is positioned downstream of the house.

The plaintiffs have experienced a number of sewage backups in the basement of the house since owning the property. Brian Sinotte testified to various backups occurring in 1974, 1987, 1992, 1997 and 2001. In a 2002 letter to the defendant's board of aldermen, Delores Sinotte stated that backups had occurred in 1978, 1992, 1997 and 2001 and that minor incidents occurred between 1992 and 1997. There was no direct evidence before the court as to the cause of these backups. The plaintiffs received from the defendant reimbursement for damages sustained from a sewage backup in the 1970s and another on October 9, 1992. The plaintiffs also from time to time recovered proceeds from a homeowners' insurance policy covering damages to their personal property resulting from sewage backups.

The plaintiffs made attempts to control the sewage backups by modifying the house's plumbing. In the 1970s, the plaintiffs had Lewis Cesarello, Delores Sinotte's brother and the defendant's plumbing inspector, install three backflow devices in the basement plumbing to prevent sewer backups. Cesarello also installed a clean-out drain receptacle and a cap to the lateral line. From time to time, he would also clean out and snake the eight inch lateral line. Cesarello was the only person to do work on the plumbing in the house during the plaintiffs' ownership.

On June 17, 2001, the plaintiffs experienced a serious sewage backup. Delores Sinotte testified that during the event, the cap to the lateral line came off, allowing the sewage to enter the basement. She stated that one day after the backup, she contacted the defendant by telephone and provided it with notice of the incident. On that day, June 18, 2001, the plaintiffs filed a claim under their homeowners' insurance policy for the losses

that they had sustained as a result of the previous day's backup. Less than six months later, Delores Sinotte sent to the defendant a letter dated December 11, 2001, in which she detailed the plaintiffs' claim for losses due to the June 17, 2001 backup. The defendant acknowledged receipt of the plaintiffs' claim by letter dated December 19, 2001. Delores Sinotte sent the defendant another letter, dated June 28, 2004, demanding that the defendant pay the plaintiffs' claim regarding the June 17, 2001 incident and stating her intention to sue the defendant if it did not.

The plaintiffs commenced this action against the defendant by service of process on August 27, 2004. This was approximately three years, two months and ten days after the June 17, 2001 sewage backup. Their complaint was drawn in seven counts: negligence, trespass, private nuisance, public nuisance, inverse condemnation under the state and federal constitutions, respectively, and negligent infliction of emotional distress. The complaint referenced the sewage backup that occurred on June 17, 2001, but it did not allege any backup or other event related to the sewer system occurring after that date. In count one, which sounded in negligence, the plaintiffs alleged that the defendant was negligent in its construction and maintenance of the sewer system and that it should have known of the condition of the sewer system yet failed to repair it adequately. These allegations of negligence were repeated and realleged in each of the remaining six counts of the complaint. The plaintiffs sought monetary, compensatory and punitive damages for loss of personal property and for diminution of the value of their property as well as for emotional distress.[1]

Following a trial to the court, the court rendered judgment for the defendant. In its first memorandum

[1] During trial, the plaintiffs withdrew their claim for damages resulting from the loss of personal property.

of decision, the court noted that Delores Sinotte testified to a backup that occurred in June, 2006, but that the plaintiffs had not amended their complaint to reflect this fact. The court found that the defendant "was acutely aware of the recurrent problems with the chronic sewer backup at [the plaintiffs' residence]. In fact, current records from the water pollution control indicated that either periodic cleaning or regular maintenance was performed on the sewer main for Old Colony Drive at least fourteen times from February 25, 2002, through November 11, 2006." The court stated that "[a]t the present time, the plaintiffs still experience gurgling in their plumbing, and, on occasion, the bathroom and kitchen sink[s] on the first and only floor of their dwelling have had sand, twigs and debris deposited from the sewer backup."

The court concluded in this first memorandum of decision, however, that the plaintiffs' tort claims were barred by the statutes of limitation. Taking June 17, 2001, as the date of the "latest serious incident," the court stated that "[n]otwithstanding the fact that the plaintiffs had an intent to file suit and even filed notice of such with the defendant, the plaintiffs did not file suit within the three year maximum time period allowed by either [General Statutes §§] 52-577 or [52-584]. They have proffered no argument as to why the statutes should not apply or should be tolled in the present circumstances. Therefore, their common-law tort claims are time barred and unavailing." The court also concluded that the plaintiffs' inverse condemnation claims failed because their property retained economic value and that its use as a residence had not been substantially destroyed.

The plaintiffs thereafter filed a motion for reconsideration. They argued that the court improperly failed to

consider their previously briefed position that the statutes of limitation for their negligence, trespass, nuisance and negligent infliction of emotional distress claims were tolled by operation of the continuing course of conduct doctrine. The plaintiffs also challenged the court's determination of their inverse condemnation claim. The court granted the motion for reconsideration. In its second memorandum of decision, the court declined to reconsider its ruling with respect to the inverse condemnation count, finding that the plaintiffs neither offered any new law nor alleged any misapprehension of facts by the court to warrant reconsideration. The court found that the plaintiffs' continuing course of conduct argument was unavailing, as no special relationship existed between the parties. The court further concluded that there was no evidence that the defendant had engaged in wrongful acts in the period between June 21, 2001, and August 27, 2004, when the plaintiffs commenced their action, that would implicate a continuing course of conduct.

Although it concluded that the continuing course of conduct doctrine did not save the plaintiffs' common-law tort claims, the court considered a different interpretation of the plaintiffs' argument, characterizing it as alleging that the conditions constituted a permanent private nuisance. The court found that "the gurgling noises and threat of sewage backups constitute a permanent nuisance, the limitations period for which did not begin to run until it became clear, based on repeated unsuccessful attempts at remedying the problem, that no amount of money or precaution was going to completely remove the noises, twigs and potential for large backups." It found February 25, 2002, to be the date that the nuisance became permanent, as this was the date that the defendant began to keep detailed records of its periodic cleaning and maintenance of the sewer in the area of the plaintiffs' property. Without specifying

which specific statute applied, the court concluded that the plaintiffs' private nuisance claim was not barred by operation of any statute of limitations.

Citing appraisal reports completed in 2004 and 2006 by certified real estate appraiser Walter J. Kloss, the court found that the fair market value of the property, which Kloss assessed at $230,000 on December 5, 2006, had been reduced by 30 percent as a result of the permanent nuisance. The court rendered judgment in favor of the plaintiffs on the private nuisance count of their complaint in the amount of $85,000. The defendant then appealed, and the plaintiffs cross appealed from the judgment. Additional facts will be supplied where necessary.

I

DEFENDANT'S APPEAL

The defendant claims that the court improperly determined that the plaintiffs' private nuisance claim was not barred by the statutes of limitation. It argues that because the plaintiffs' claim for nuisance was predicated on the alleged negligence of the defendant, the applicable statute of limitations is that which is contained in § 52-584. Applying the two year statute of limitations of § 52-584, the defendant maintains that the plaintiffs' private nuisance claim was barred, as they did not commence their action within two years of February 25, 2002, the date the court determined that the nuisance became permanent.[2] The plaintiffs argue that the court properly held that their claims were not

[2] The defendant does not accept the court's finding regarding the date that the nuisance became permanent, arguing in its appeal that the "cleaning of the Old Colony [Drive] sewer on February 25, 2002 has nothing whatsoever to do with the creation of the nuisance nor of making the condition permanent." According to the defendant, the operative date for statute of limitations purposes is June 17, 2001, the date of the last serious sewage backup pleaded in the complaint.

time barred. They contend that the applicable statute of limitations is § 52-577, citing case law stating that that statute applies to all torts not enumerated in § 52-584. We agree with the defendant that the applicable statute of limitations is § 52-584, and that, applying this statute, the plaintiffs' private nuisance claim was time barred.[3]

## A

Before addressing the question of whether the plaintiffs' nuisance claim was time barred, we first must determine which statute of limitations governs that claim.[4] Section 52-584 provides in relevant part: "No action to recover damages for injury to . . . real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." The statute of limitations for general

[3] The defendant's appeal contains additional claims, including that the court improperly (1) concluded that the defendant had created or maintained a private nuisance, (2) allowed Cesarello to provide expert testimony, (3) determined the diminution in value to the plaintiffs' property and (4) concluded that the plaintiffs sustained their burden of proof with regard to their assertion that they were at all relevant times in the exercise of due care. Because our conclusion that the plaintiffs' private nuisance claim was barred by the statute of limitations resolves the defendant's appeal, we do not reach the merits of these other claims.

[4] The defendant pleaded both §§ 52-577 and 52-584 in its second special defense asserting that the plaintiffs' claims were barred by the statutes of limitation. The court, in its original memorandum of decision, held that the plaintiffs' common-law tort claims were not brought "within the three year maximum time period allowed by either [§§] 52-577 or [52-584]." In its memorandum of decision granting the plaintiffs' motion for reconsideration, after holding that the conditions alleged constituted a permanent nuisance and after determining the date on which the nuisance became permanent, the court concluded that "the plaintiffs' nuisance claims are not barred by limitations, and the court vacates the portion of its previous decision in which it held that these claims were time barred." The court did not specify which statute applied.

tort actions, § 52-577, provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The plaintiffs cite to *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 441, 551 A.2d 1220 (1988), in which our Supreme Court stated that "[t]he three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." (Internal quotation marks omitted.) The plaintiffs state that § 52-584 does not apply to their claims for trespass, private nuisance and public nuisance. However, the plaintiffs' argument does not address the plain language of the statute that makes it applicable to actions to recover damages "to real or personal property, caused by negligence . . . ." General Statutes § 52-584. The plaintiffs' private nuisance claim clearly was predicated on negligence. The complaint's initial count, which sounded in negligence, alleged that the defendant was negligent in its construction and maintenance of the sewer system and that it should have known of the condition of the sewer system yet failed to repair it adequately. These allegations of negligence were repeated and realleged in count three, the private nuisance count. That count does not allege that the creation of the nuisance was intentional.

Our case law also supports the conclusion that § 52-584 applies here. We address two cases in turn that have as a common thread the principle that § 52-584 is the applicable statute of limitations barring negligence claims and nuisance claims arising out of negligence. In a case somewhat factually similar to the present one, the plaintiffs brought claims against the defendant municipality for, inter alia, negligence and nuisance due to serious flooding problems on the plaintiffs' property. See *Johnson* v. *North Branford*, 64 Conn. App. 643,

646–48, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). Filed in 1994, the complaint in *Johnson* alleged that the flooding, of which the plaintiffs became aware in 1990, resulted from the defendant's actions in filling in a swale on a neighboring property in 1969 or 1970. Id., 644, 646–47. Following the plaintiffs' case-in-chief, the defendant filed a motion for a directed verdict, arguing that the negligence claim was barred by § 52-584 and that §§ 52-577 and 52-584 barred the nuisance claim. Id., 644. The trial court granted the defendant's motion for a directed verdict, after considering it sua sponte, holding that the claims were barred by the statutes of limitation. Id., 645.

On appeal, the plaintiffs in *Johnson* claimed that the court improperly had determined that § 52-584 barred their negligence and nuisance claims. Id., 647–48. With respect to the latter, this court noted that "because the nuisance claim is predicated on negligence, § 52-584 is the applicable statute of limitations." Id., 648 n.10.[5] Because the plaintiffs had notice of actionable harm resulting from the defendant's negligent act in 1990, their action, which was commenced in July, 2004, was untimely, and, accordingly, we affirmed the judgment of the trial court. Id., 649.

In *Lombard* v. *Edward J. Peters, Jr., P.C.*, 79 Conn. App. 290, 292–93, 830 A.2d 346 (2003), the plaintiffs argued that their claim for damages to personal property caused by the defendant's negligent misidentification of the property was governed by § 52-577. This court concluded otherwise, holding that "where the plaintiffs' claim is predicated on injury to their personal property caused by negligence, it is clear that they have

---

[5] In *Johnson*, we declined to decide whether § 52-577 also applied to the plaintiffs' nuisance claim because the nuisance claim was based on the same operative facts as the negligence claim, and it was not clear from the record whether the trial court had directed the verdict on the ground that § 52-577 also applied. See *Johnson* v. *North Branford*, supra, 64 Conn. App. 648 n.10.

brought a claim within the purview of § 52-584." Id., 299. This reasoning applies equally to claims for damage to real property caused by negligence, as the statute makes no distinction between real and personal property.

The plain language of § 52-584 making it applicable to actions "to recover damages for injury to . . . real or personal property, caused by negligence"; General Statutes § 52-584; and the cited case law demonstrate that the plaintiffs' claim for private nuisance was governed by that statute.

## B

We turn now to the defendant's claim that the court improperly determined that the plaintiffs' private nuisance claim was not time barred. The question of whether a claim is barred by the statute of limitations is a question of law over which we exercise plenary review. *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–408, 957 A.2d 836 (2008).

We initially set forth the general principles of law underlying a claim sounding in private nuisance. "[I]n order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence. . . . Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both

the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable." (Citations omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2002).

The complaint, which was served on the defendant on August 27, 2004, stated that "[o]n or about June 17th, 2001 the plaintiffs' real property, the improvement thereon and the contents therein suffered damage by reason of offal, filth, water and/or sewage having been discharged onto, upon and in their property located at 82 Old Colony Drive, in the [c]ity of Waterbury, [s]tate of Connecticut." It alleged that the defendant had notice of the potential for backups at the property due to previous encroachments of sewage in the 1970s and 1990s and that the defendant was negligent in its construction and maintenance of the sewer system. At trial, Delores Sinotte testified that the plaintiffs experienced "sewage seepage" in their basement pipes in June, 2006. The plaintiffs did not inform the defendant of this occurrence because it caused no damage. The plaintiffs did not move at any time to amend the pleadings to include the June, 2006 incident. Indeed, in no count of the complaint did the plaintiffs allege an incursion of sewage on any date later than June 17, 2001.

In its initial memorandum of decision, the court concluded that the plaintiffs' common-law tort claims—those sounding in negligence, trespass, private and public nuisance, and negligent infliction of emotional distress—were time barred because the action was not brought within the three year maximum time limit found

in either §§ 52-584 or 52-577. Upon reconsideration, the court rejected the plaintiffs' argument that the claims were saved through operation of the continuing course of conduct doctrine. However, alternatively considering the plaintiffs' argument as alleging the creation of a permanent private nuisance, the court concluded that the plaintiffs had proven the elements of a private nuisance and that such nuisance was permanent. The court set February 25, 2002, the date that the defendant began to keep detailed records of the periodic cleaning and regular maintenance of the sewer in the area of the plaintiffs' home, as the date that the nuisance became permanent.

Following our thorough review of the record, we conclude that the plaintiffs' private nuisance claim, predicated on the defendant's alleged negligence, was time barred under § 52-584. The latest date of actionable harm pleaded by the plaintiffs was June 17, 2001, the date of the sewage backup. It was to this date that the plaintiffs thereafter were bound, not having sought to amend their pleadings at any point after commencement of the action. "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted; internal quotation marks omitted.) *Matthews* v. *F.M.C. Corp.*, 190 Conn. 700, 705, 462 A.2d 376 (1983). The evidence was clear that the plaintiffs had notice of the defendant's injurious act at the time it occurred; they filed a claim with their homeowners' insurance carrier and informed the defendant of the incident on June 18, 2001. Section 52-584 requires that a claim for injury to real property resulting from negligence be brought "within two years from the date when the injury is first sustained or discovered . . . ." Given the facts pleaded in the complaint and the undisputed evidence of their awareness of actionable harm, the

plaintiffs' action, alleging a negligent private nuisance, had to be filed before June 17, 2003, in order to be timely. The plaintiffs, therefore, failed to commence their action within two years of the time they were aware of actionable harm.

We note that this outcome would not be contrary if the analysis were to be based on the February 25, 2002 date that the court set as the date when the nuisance became permanent. Employing that date, the plaintiffs were required to commence their action before February 25, 2004. Their action, brought on August 27, 2004, thus would be untimely from this date as well. We conclude that the court improperly held that the plaintiffs' claim for private nuisance was not barred by the statute of limitations, and, accordingly, we reverse the judgment of the court.

## II

### PLAINTIFFS' CROSS APPEAL

In their cross appeal, the plaintiffs claim that the court improperly (1) failed to determine that the defendant had taken their property through inverse condemnation, (2) failed to determine that the defendant had created a public nuisance and (3) held that their claims for negligence, trespass and negligent infliction of emotional distress were time barred. We disagree and will address each of the plaintiffs' claims in turn.

### A

The plaintiffs first claim that the court improperly held that the defendant had not taken their property through inverse condemnation. Specifically, they argue that the court incorrectly interpreted case law from our Supreme Court and from this court in concluding that inverse condemnation required a showing that either the fair market value of the property or the use to

which the property was put, as a whole, was completely destroyed. We are not persuaded.

"Whether private property has been taken by inverse condemnation is a question of law subject to our plenary review. . . . The trial court's conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. . . .

"Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. . . . An inverse condemnation claim accrues when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding . . . . Accordingly, an inverse condemnation action has been aptly described as an eminent domain proceeding initiated by the property owner rather than the condemnor." (Citations omitted; internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 83, 931 A.2d 237 (2007).

"[T]here is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed. . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Internal quotation marks omitted.) Id., 84.

In *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 61, Tilcon Minerals, Inc. (Tilcon), brought a claim for

inverse condemnation against the city of Bristol, alleging that leachate from the city's landfill had contaminated Tilcon's adjacent property. Tilcon had for many years conducted mining operations on its land, and its business plan called for the eventual ceasing of mining and preparation of the land for residential development. Id., 62–63. Following a trial to the court, the trial court concluded that a constitutional taking had occurred due to the contamination of groundwater under Tilcon's property and that "the contamination had created a stigma that substantially interfered with Tilcon's right to use the property for thirty-one years and markedly depreciated its value." Id., 82. The court found that the contamination did not, however, totally destroy the marketability of the property as residential lots but, rather, reduced its value by one half. Id., 82–83.

On appeal, in support of the trial court's decision, Tilcon argued that "inverse condemnation can occur even when property has not been appropriated to the extent that no value remains, and that '[e]njoyment and use of the entire property need not be completely destroyed for land to be deemed taken.' *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 280, 721 A.2d 1197 (1998)." *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 85. It further maintained that all practical uses of the land, including residential development, had been abrogated by the contamination and the stigma it created. Id. Our Supreme Court disagreed, stating: "Connecticut law on inverse condemnation requires *total destruction of a property's economic value or substantial destruction of an owner's ability to use or enjoy the property.* . . . Although it may be difficult to determine in certain close cases whether the alleged infringement on property rights is sufficient to constitute the type of complete taking that inverse condemnation requires, this is not such a case. Tilcon was not

deprived of all reasonable and proper use of the property because the groundwater had no effect on its present mining-related activities and Tilcon introduced no evidence that the property could not be marketed for residential development even if burdened by a stigma." (Citations omitted; emphasis added.) Id., 85–86. The court accordingly reversed the inverse condemnation judgment. Id., 86, 91.

Citing to both *Bristol* and *Citino*, the court in the present case determined that despite its history of sewage backups, the plaintiffs' property substantially retained both economic value and its prior use as a residence. It held that notwithstanding the plaintiffs' "understandable and significant frustration and hardship as a result of the sewage backups in their basement," no constitutional taking had occurred. Following our review of the record and the relevant controlling case law, we cannot conclude that these conclusions of the court were legally or logically inconsistent with the facts or a result of "application of some erroneous rule of law material to the case" by the court. (Internal quotation marks omitted.) See *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 83. The evidence, including the various real estate appraisals, clearly showed that the property retained economic value. The Supreme Court in *Bristol* underscored "the type of complete taking" required to constitute inverse condemnation by noting that Tilcon had not been deprived of all reasonable and proper use of its property due to the groundwater contamination. Id., 85. Similarly, here, the court concluded, and we agree, that although the plaintiffs' residential use of their property certainly was affected by the sewage backups, the interference with that use was not so substantial as to rise to the level of a constitutional taking.

B

The plaintiffs next claim that the court improperly failed to hold that the defendant had created a public

nuisance. They contend that the sewage backups constituted a public nuisance because they "[interfered] with rights common to the general public; i.e., the right of the general public to use the defendant's sewage system with safety, the right of the general public to the safe and hygienic conveyance of waste water, the right of the general public to the quiet enjoyment of their home, and the right to appropriate compensation for the taking of their property."

"Although the existence of a nuisance generally is a question of fact, for which we invoke a clearly erroneous standard of review . . . where the court makes legal conclusions or we are presented with questions of mixed law and fact, we employ a plenary standard of review . . . ." (Citation omitted.) *Kinsale, LLC* v. *Tombari,* 95 Conn. App. 472, 479, 897 A.2d 646 (2006) (*Flynn, C. J.,* dissenting). To prevail in a claim for public nuisance, a plaintiff must prove the following elements: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *Pestey* v. *Cushman,* supra, 259 Conn. 355. In addition, the plaintiff must prove that "the condition or conduct complained of interferes with a right common to the general public. . . . Nuisances are public where they . . . produce a common injury . . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Citation omitted; internal quotation marks omitted.) *Boyne* v. *Glastonbury,* 110 Conn. App. 591, 606, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).

"Whether an interference is unreasonable in the public nuisance context depends . . . on (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . . 4 Restatement (Second), [Torts] § 821B [1979]. The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake. Id., § 821D, comment (c)." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, supra, 259 Conn. 356 n.5.

The plaintiffs contend, in essence, that because the injury they suffered originated from a source shared by, or common to, other members of the general public, i.e., their sewer line, the backups constituted a public nuisance. This argument misinterprets the "common rights" component of a claim for public nuisance. The sewage backups in the plaintiffs' basement did not "produce a common injury"; (internal quotation marks omitted) *Boyne* v. *Glastonbury*, supra, 110 Conn. App. 606; but instead affected only the plaintiffs' property. The incursions do not involve the public's health, safety, peace, comfort or convenience. Although the total number of persons affected is not dispositive, a public nuisance does not exist in instances, such as those present here, when the interference alleged was sustained only by the plaintiffs and not by other members of the public. Accordingly, the plaintiffs' claim must fail.

C

The plaintiffs finally claim that the court improperly held their negligence, trespass and negligent infliction of emotional distress claims to be time barred. They specifically maintain that the limitations periods for each claim were tolled by the defendant's continuing course of conduct. We disagree.

Whether the plaintiffs' claims are barred by the applicable statutes of limitation presents a question of law to which we afford plenary review. See *Certain Underwriters at Lloyd's, London* v. *Cooperman*, supra, 289 Conn. 407–408. "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . The continuing course of conduct doctrine is conspicuously fact-bound." (Internal quotation marks omitted.) *Blinkoff* v. *O & G Industries, Inc.*, 113 Conn. App. 1, 13–14, 965 A.2d 556, cert. denied, 291 Conn. 913, 969 A.2d 175 (2009).

We conclude that the trial court properly held that the plaintiffs' claims were not saved by the continuing course of conduct doctrine as the record does not support application of that doctrine in these circumstances. There was no "breach of a duty that remained in existence"; (internal quotation marks omitted) id., 13; after the initial alleged wrong pleaded in the complaint: the sewage incursion on June 17, 2001. To hold otherwise essentially would expand without limit the defendant's duty toward the plaintiffs. Additionally, there was no special relationship between the plaintiffs and the defendant such as exists between an attorney and his

client or a doctor and her patient. Finally, there was no later wrongful conduct of the defendant related to the initial wrong. The court specifically found that "there is no evidence that the defendant engaged in wrongful acts between the date of the last backup, which occurred in June, 2001, and the date that the plaintiffs commenced this action, on August 27, 2004, that might implicate a continuing course of conduct." The plaintiffs' argument to the contrary is unavailing.

The judgment is reversed only as to the private nuisance count, and the case is remanded with direction to render judgment in favor of the defendant thereon. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.