******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JUDY BRUSBY *v.* THE METROPOLITAN
DISTRICT ET AL.
(AC 36560)

Lavine, Beach and Alvord, Js.

*Argued May 20—officially released October 20, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Hon. Richard M. Rittenband, judge trial
referee.)

*Justin R. Clark*, for the appellant (plaintiff).

*Jack G. Steigelfest*, with whom, on the brief, were
*Thomas P. Cella* and *Christopher Harrington*, for the
appellee (named defendant).

*Opinion*

ALVORD, J. The plaintiff, Judy Brusby, appeals from the summary judgment rendered by the trial court in favor of the defendant The Metropolitan District.[1] On appeal, the plaintiff claims that the court improperly (1) granted the defendant's motion for summary judgment on the ground of governmental immunity, (2) granted the defendant's motion for summary judgment on the basis of the applicable statute of limitations for negligence claims, and (3) concluded that the plaintiff's contract claims were actually tort claims for purposes of determining the applicable statute of limitations. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff owns and resides in a house located on Newport Avenue in West Hartford. The defendant is a municipal corporation that provides potable water and sewerage services to its customers, including the plaintiff, on a regional basis. On October 15, 2005, and March 7, 2011, raw sewage entered into and flooded the plaintiff's partially finished basement. The plaintiff commenced this action against the defendant on August 2, 2011, alleging that its negligent acts caused her to suffer personal injuries and damages to her property as the result of those two incidents. The alleged negligence included, inter alia, the failure to properly install backflow safety features at her property and the failure to "properly build, maintain, construct, design, inspect, test, service and maintain the sewer system . . . ." In her complaint, the plaintiff included counts for negligence, negligent infliction of emotional distress, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit.

The defendant filed an answer with six special defenses on October 1, 2012. In its special defenses, the defendant alleged that the plaintiff's claims were barred by "the immunity afforded to it by [General Statutes] § 52-557n"; by "the doctrines of common law governmental and/or municipal immunity or by qualified governmental immunity"; and by "the applicable statute of limitations for [each] claim." The plaintiff filed a general denial to the allegations of the special defenses on October 16, 2012.

On December 9, 2013, the defendant filed a motion for summary judgment as to all of the counts directed against it. The defendant made the following claims: (1) governmental immunity barred the plaintiff's negligence claims; (2) all of the plaintiff's claims were time barred by the applicable statute of limitations; and (3) the plaintiff's contract claims were, in reality, tort claims recast as contract claims. In support of its motion, the defendant filed a memorandum of law,

excerpts from deposition transcripts and five affidavits. The plaintiff filed a memorandum in opposition to the defendant's motion for summary judgment on January 21, 2014. In her memorandum, the plaintiff argued that the defendant's "negligent acts were a part of [its] proprietary function," that the negligent acts were ministerial in nature, that the defendant was "liable based upon the identifiable person imminent harm exception" if the acts were deemed to be discretionary in nature, that the applicable statute of limitations was "equitably tolled by the continuing course of conduct doctrine," and that she had alleged viable contract claims in her complaint. Accompanying her memorandum, the plaintiff filed excerpts from deposition transcripts, one affidavit, a copy of the 1929 special act creating The Metropolitan District, and a compilation of the defendant's sewer ordinances. On January 27, 2014, the defendant filed a reply to the plaintiff's opposition.

A hearing on the defendant's motion for summary judgment was held on January 27, 2014.[2] At that time, the defendant's counsel repeated the arguments set forth in the defendant's memorandum of law. Additionally, he argued that the proprietary function exception to governmental immunity was not applicable in this case. The plaintiff's counsel argued that "sewer utilities are engaged in proprietary conduct because they are making money in exchange for their water services." He claimed that the complaint properly alleged that the defendant was engaged in a proprietary function because it included allegations that the plaintiff "was a customer of the [defendant]" and that "the [defendant] provided potable water and sewerage services to the property." He also stated that the defendant had admitted those allegations in its answer.

With respect to the defendant's claim that the plaintiff's action was time barred, the plaintiff argued that the applicable statute of limitations was tolled by the continuing course of conduct doctrine. According to the plaintiff's counsel, "[t]he continuing course of conduct was the defective sewer that remained defective from 2006 throughout 2011." Additionally, the plaintiff's counsel argued that the contract claims were viable independent claims that arose from the fact that the plaintiff paid the defendant for its sewer services. Following concluding remarks by counsel, the court indicated that it would "take [the matter on] the papers."

On January 30, 2014, the court sent a computer generated notice to the parties advising them that it had granted the defendant's motion for summary judgment. The notice, which contained the entire decision of the court,[3] provided: "The plaintiff's action violates the statute of limitations, [General Statutes §] 52-584, for the same reasons described in the ruling on [the town's] motion [for summary judgment].[4] The court further finds that the alleged contract complaints are really tort

claims. The actions or inactions of the [defendant] are discretionary under . . . [§] 52-557n. The exception of an identifiable person subject to imminent harm does not apply because the conversation between Mr. Godbout [a municipal public official] and the plaintiff occurred after the flooding of 2011. Therefore, prior thereto, the plaintiff was not an identifiable person. All other claims are issues of fact, but the immunity and the statute of limitations defeat [the] plaintiff's claims." This appeal followed.

"The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 295–96, 44 A.3d 879, cert. denied,

307 Conn. 938, 56 A.3d 950 (2012).

I

GOVERNMENTAL IMMUNITY

"The general rule is that governments and their agents are immune from liability for acts conducted in performance of their official duties. The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in . . . § 52-557n."[5] (Internal quotation marks omitted.) *Martin* v. *Westport*, 108 Conn. App. 710, 729, 950 A.2d 19 (2008).

The plaintiff's first claim is that the court improperly granted the defendant's motion for summary judgment on the ground of governmental immunity. Specifically, the plaintiff argues that the defendant cannot avail itself of the immunity afforded by § 52-557n because (1) the alleged acts of negligence were connected with the defendant's proprietary function of operating a sanitary sewer system, (2) the alleged acts of negligence were ministerial in nature, and (3) if the alleged acts of negligence were discretionary in nature, the defendant is nevertheless liable because of the imminent harm to identifiable persons exception to governmental immunity.

A

Proprietary Function

In her opposition to the defendant's motion for summary judgment and at the January 27, 2014 hearing before the trial court, the plaintiff claimed that the defendant could not avail itself of the immunity afforded by § 52-557n because all of the alleged acts of negligence were connected with the defendant's proprietary function of providing sanitary sewer services to paying customers.[6] The plaintiff argued that she had alleged that the defendant provided potable water and sewerage services to her property and that she was the defendant's customer. She stated that the defendant had admitted those allegations in its answer to the complaint. The plaintiff maintained that, if the defendant's operation was proprietary as she claimed, then it was irrelevant whether the alleged acts of negligence were ministerial or discretionary in nature.

The defendant's motion for summary judgment did not address the issue of whether it derived a "special corporate profit or pecuniary benefit"; General Statutes § 52-557n (a) (1) (B); from the operation of its water and sewer systems. Similarly, none of the affidavits or other attachments to the defendant's motion expressly addressed that issue.[7] In the defendant's reply to the plaintiff's opposition to its motion, it argued that the plaintiff did not properly allege a proprietary function claim in her complaint and that she had provided no evidence to show that the defendant derived a corporate profit or other pecuniary benefit in providing sanitary

sewer services. The court concluded that the defendant was not engaged in a proprietary function[8] "because the revenue is used only to pay current and long range expenses . . . ."[9]

In determining whether a municipality's activity is proprietary in nature, we look to *Considine* v. *Waterbury*, 279 Conn. 830, 905 A.2d 70 (2006), in which our Supreme Court provided a thorough analysis of § 52-557n (a) (1) (B). After determining that § 52-557n (a) (1) (B) codified the common-law rule that municipalities are liable for their negligent acts committed in their proprietary capacity, the court discussed the meaning of " 'special corporate profit' " and " 'pecuniary benefit.' " Id., 845. "If a municipality is acting only as the agent or representative of the state in carrying out its public purposes . . . then it clearly is not deriving a special corporate benefit or pecuniary profit." (Citation omitted; internal quotation marks omitted.) Id., 845–46. A municipality may "charge a nominal fee for participation in a governmental activity and [that activity] will not lose its governmental nature as long as the fee is insufficient to meet the activity's expenses." Id., 847.

On the other hand, "a municipality generally has been determined to be acting for its own special corporate benefit or pecuniary profit where it engages in an activity for the particular benefit of its inhabitants . . . or if it derives revenue in excess of its costs from the activity." (Citation omitted; internal quotation marks omitted.) Id. For example, the operation of a water utility for profit is a proprietary function. *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 53, 881 A.2d 194 (2005).[10] "When a municipality derives substantial revenue from its commercial use of municipal property, it has been considered nonetheless to be engaged in a proprietary function even if it reinvests that revenue back into the property's maintenance expenses or to pay down debt related to the property." *Considine* v. *Waterbury*, supra, 279 Conn. 848. If a municipality is engaged in a proprietary act and not a governmental act, the distinction between discretionary and ministerial acts does not apply. Id., 854.

We turn now to the facts of the present case and provide some background as to the defendant's history. "The defendant is a municipal corporation created in 1929 by a special act of the General Assembly. 20 Spec. Acts 1204, No. 511. It was given broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways." *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 450, 280 A.2d 344 (1971). As previously discussed, the defendant is a *single* entity that provides *both* water and sewerage services to customers within its district.

A recent Supreme Court decision addressed the liability of the defendant in a personal injury action com-

menced by a plaintiff who rode her bicycle into a closed pipe gate on property maintained by the defendant in connection with its provision of water services. In *Blonski* v. *Metropolitan District Commission*, 309 Conn. 282, 284, 71 A.3d 465 (2013), the plaintiff alleged that the defendant had negligently maintained the gate in an unsafe and dangerous condition and that the defendant's conduct was connected to the defendant's proprietary function of operating a water supply company. As a special defense, the defendant asserted that it was immune from liability under § 52-557n. Id., 288. Our Supreme Court concluded that the defendant was liable pursuant to § 52-557n (a) (1) (B) because the evidence supported the jury's finding that the maintenance of the gate was inextricably linked to the defendant's proprietary water supply operation.[11] Id., 292–93.

If the defendant's water supply operation is proprietary, is its sewer operation also proprietary? There is nothing in the record that indicates whether the revenues from the sewer operation are handled differently or even separately from the revenues generated by the water supply operation. It is one municipal corporate entity that provides two different services to customers. Having carefully reviewed the entire record in this case, we cannot say at this stage of the proceedings that the defendant's provision of sanitary sewer services to its paying customers is not proprietary as a matter of law.[12] Accordingly, the trial court improperly determined that the defendant was entitled to immunity on that basis.

The defendant argues that "[t]he plaintiff presented no evidence to establish special corporate profit or pecuniary benefit associated with [the] operation of [the defendant's] sewer services." More specifically, the defendant claims that the plaintiff "presented no evidence to raise . . . triable issues of fact as to whether the [defendant] profits" from its sewer operation. This argument fails, however, because the defendant, as the moving party for the summary judgment, was obligated to demonstrate that there was no genuine issue as to any material fact. The defendant submitted no evidence with respect to the proprietary function issue in its motion for summary judgment, the documents submitted in support of that motion or in its reply to the plaintiff's opposition to the motion. Therefore, in the absence of evidence, it was not incumbent upon the plaintiff to submit countervailing evidence to show that the defendant did derive a special corporate profit or pecuniary benefit from its sewer operation.

"[T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment . . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute." (Internal

quotation marks omitted.) *Mills* v. *The Solution, LLC*, 138 Conn. App. 40, 62, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012). "[W]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Internal quotation marks omitted.) *Rockwell* v. *Quintner*, 96 Conn. App. 221, 229–30, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006).

On the basis of the record before us, we conclude that the court improperly granted the defendant's motion for summary judgment on the ground of governmental immunity because a genuine issue of material fact exists as to whether the defendant was engaged in a proprietary function in the operation of its sanitary sewer system.

B

Ministerial Acts

The plaintiff also claims that the court improperly concluded that the defendant was entitled to immunity under § 52-557n because the alleged acts of negligence were not ministerial in nature.[13] In her complaint, the plaintiff alleged that the defendant "owed a ministerial duty to [the plaintiff] to properly build, maintain, construct, service, engineer, test, design and inspect the sewer lines on Newport [Avenue]" and that it "owed a ministerial duty to [the plaintiff] to make sure that [her] property was protected from main sewage backflows." The alleged acts of negligence included the failure to adequately install backflow safety features at her property and the failure to properly inspect, service and maintain the sewer system for her property. The defendant, in its motion for summary judgment, argued that all of the alleged acts of negligence were discretionary in nature. The trial court agreed with the defendant.

Section 52-557n (a) (1) sets forth the circumstances under which a municipality will be held liable for damages to a complainant. The statute provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." General Statutes § 52-557n (a) (1). The statute also specifies two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Gen-

eral Statutes § 52-557n (a) (2). "In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Coley* v. *Hartford*, 312 Conn. 150, 162, 95 A.3d 480 (2014).

The "determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . ." (Internal quotation marks omitted.) Id. Nevertheless, "there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Footnote omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 307–308, 999 A.2d 700 (2010).

"Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions." *Violano* v. *Fernandez*, 280 Conn. 310, 322, 907 A.2d 1188 (2006). Significantly, the crux of the plaintiff's complaint in this case stems from the defendant's alleged failure to properly maintain and inspect its sewer lines and equipment. The plaintiff argues that the special act creating the defendant and the defendant's sewer ordinances impose the ministerial duty to maintain and to repair its sewer system.

"[W]hat constitutes a reasonable, proper or adequate inspection involves the exercise of judgment." *Evon* v. *Andrews*, 211 Conn. 501, 506, 559 A.2d 1131 (1989). "A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs." *Grignano* v. *Milford*, 106 Conn. App. 648, 656, 943 A.2d 507 (2008). "There is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions." *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 273, 41 A.3d 1147 (2012). If, after an inspection of its sewer system, the defendant, in its discretion determines that repairs are necessary, it then determines when and in what manner such repairs should be made and what future maintenance is required.

Neither the act nor the ordinances referenced by the plaintiff prescribe the *manner* in which the sewer system is to be maintained or repaired. Such determinations necessarily involve the exercise of judgment. Our

conclusion is supported by the holding in *Silberstein* that the "maintenance of the roads, storm drains and sewers was discretionary in nature." Id. Accordingly, because it is apparent from the complaint that the alleged negligent acts or omissions necessarily involved the exercise of judgment, we conclude that the court properly determined that they were discretionary in nature as a matter of law.

C

Imminent Harm to Identifiable Persons Exception

The plaintiff next argues that if the alleged acts are determined to be discretionary in nature, the defendant is nevertheless liable because of the applicability of the imminent harm to identifiable persons exception to governmental immunity. Specifically, she argues that she falls within that exception because she testified at her deposition that "shortly after the 2011 sewage flooding incident at her home, she was contacted by Marty Godbout [a public official with the defendant] and was told that 'I need to let you know that bad weather may be coming and you are at risk that this can happen again.' "

Because we have determined that the defendant's alleged acts of negligence were discretionary in nature as a matter of law, the defendant is shielded from liability by governmental immunity as long as the actions do not fall within any of the "three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615, 903 A.2d 191 (2006). Only one of those exceptions is relevant in the present appeal, that of the imminent harm to identifiable persons exception to governmental immunity.

"[Our Supreme Court] has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply. . . . [T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." (Citation omitted; internal quotation marks omitted.)

*Haynes* v. *Middletown*, 314 Conn. 303, 312–13, 101 A.3d 249 (2014).

With respect to the plaintiff's claim that the alleged negligently maintained sewer system posed a risk of imminent harm, we must look to the standard most recently established in *Haynes* v. *Middletown*, supra, 314 Conn. 303. Our Supreme Court held: "[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." Id., 322–23. The plaintiff claims that she was an identifiable victim because Godbout allegedly contacted her after the 2011 flooding incident to warn her that bad weather was in the forecast, and that she was at risk for additional flooding in her basement. The imminent harm, according to the plaintiff, was apparent because of the warning given to her by the defendant's official.

We note that almost six years elapsed from the date of the first flooding incident to the date of the second flooding incident. The alleged facts of this case are very similar to the circumstances set forth in *Silberstein* v. *54 Hillcrest Park Associates, LLC*, supra, 135 Conn. App. 262. In *Silberstein*, the plaintiffs alleged that the defendant, a quasi-municipal corporation, failed to properly maintain the roads and drainage systems in their neighborhood, resulting in the periodic flooding of their property. Id., 265, 267 n.3. This court determined that the plaintiffs were not subject to imminent harm because the flooding was episodic as to occurrence and happened over a period of years. Id., 275. In *Haynes* v. *Middletown*, supra, 314 Conn. 322 n.14, our Supreme Court commented on the *Silberstein* decision and observed that "it would have made more sense to hold that the risk of harm was not imminent because it was not apparent to the municipal defendant [in *Silberstein*] that the risk of harm was so great that the defendant's duty to act immediately to prevent the harm was clear and unequivocal."

Additionally, as stated by the trial court in this case, the only evidence provided in support of the plaintiff's argument that the exception applied was the statement of a public official given *after* the 2011 flooding incident. Accordingly, for the foregoing reasons, we agree with the court that the plaintiff failed to demonstrate that there was a triable issue of material fact that the plaintiff was an identifiable person subject to imminent harm.[14]

II

STATUTE OF LIMITATIONS

The plaintiff next claims that the court improperly granted the defendant's motion for summary judgment on the basis that all of her claims were barred by the applicable statute of limitations for negligence claims.

The plaintiff commenced the present action on August 2, 2011. She concedes that § 52-584[15] provides a maximum three year limitation period for bringing such claims.[16] Nevertheless, she argues that the continuing course of conduct doctrine tolls that period with respect to the 2005 flooding incident and the 2006 installation of the backflow preventer valve, and that her action was commenced within the time limitation period of § 52-584 with respect to the 2011 flooding incident. According to the plaintiff, "[t]he 2011 incident is not time barred because suit was filed months after the second flooding incident where there is a genuine issue of material fact as to whether or not the failure of the main sewer line caused said incident."

The defendant claims that the continuing course of conduct doctrine is not applicable in this case, so that all claims related to the 2005 flooding incident and the 2006 installation of the backflow preventer valve are time barred. The defendant further claims that any damages sought for the 2011 incident are precluded "because the last act or omission of the defendant identified by the plaintiff, the supposedly faulty installation of the backflow preventer valve, occurred more than three years before this action was instituted by service of process in 2011."

We first address the claim that the trial court improperly failed to conclude that the continuing course of conduct doctrine tolled the time limitation period with respect to the 2005 flooding incident and the alleged negligent installation of the backflow preventer valve in 2006.[17] The plaintiff relies solely upon the continuing course of conduct doctrine in her argument that her claims are not time barred with respect to those two incidents. If the continuing course of conduct doctrine is not applicable under the circumstances of this case, the statute of limitations bars those claims.

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 310, 94 A.3d 553 (2014). "The question of whether a claim is barred by the statute of limitations is a question of law over which we exercise plenary review." *Sinotte* v. *Waterbury*, 121 Conn. App. 420, 431, 995 A.2d 131, cert. denied, 297 Conn. 921, 996 A.2d 1192 (2010).

The parties agree that § 52-584 is the applicable statute of limitations for the plaintiff's negligence claims.

Section 52-584 "imposes two specific time requirements on plaintiffs. The first requirement, referred to as the discovery portion . . . requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of . . . . The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Rosato* v. *Mascardo*, 82 Conn. App. 396, 401–402, 844 A.2d 893 (2004). "The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs. . . . Consequently, an action may be time barred even if no injury is sustained during the three years following a defendant's act or omission." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *North Branford*, 64 Conn. App. 643, 648, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

The continuing course of conduct doctrine has no application after the plaintiff has discovered the harm; the doctrine applies only to the repose portion of the statute and not to the discovery portion. *Rosato* v. *Mascardo*, supra, 82 Conn. App. 405. "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." (Internal quotation marks omitted.) *Sinotte* v. *Waterbury*, supra, 121 Conn. App. 440. "[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Saint Bernard School of Montville, Inc.* v. *Bank of America*, 312 Conn. 811, 835, 95 A.3d 1063 (2014).

In the present case, the plaintiff claimed that the negligent actions of the defendant caused raw sewage to flood her basement on October 15, 2005. The plaintiff alleged that she made repeated telephone calls to the defendant concerning this incident and, consequently, was accepted into the defendant's "backflow preventer program." At the plaintiff's request, a backflow preventer valve was installed at her property on June 22, 2006. The valve, according to the plaintiff's expert, was

improperly installed. On March 7, 2011, raw sewage again flooded her basement. This second incident of flooding occurred more than five years after the first flooding incident and more than four and one-half years after the installation of the backflow preventer valve. The plaintiff commenced this action approximately five months after the second flooding incident.

Considering these allegations, we address the plaintiff's claim that the statute of limitations was tolled by the defendant's continuing course of conduct. The act or omission relied upon, which would be the October 15, 2005 flooding incident and the June 22, 2006 installation of the backflow preventer valve, occurred more than three years from the time of the commencement of this action. It is time barred unless there is evidence of a special relationship between the parties or there is evidence of the defendant's later wrongful conduct related to the prior act. The plaintiff has not claimed the existence of a special relationship. Instead, she claims that the defendant's later wrongful conduct consisted of its "failure to repair the sewer line" in front of the plaintiff's house that continued through 2011. The plaintiff argues: "[T]he 2005 flooding incident was tolled by the continuing course of conduct doctrine as the installation of a backflow preventer did not solve the flooding problem although the [defendant] claimed it had."[18] The plaintiff's claim fails.

"[T]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . As to what constitutes a continuing violation of a breach, [our Supreme Court] cited with approval the following explanation: In between the case in which a single event gives rise to continuing injuries and the case in which a continuous series of events gives rise to a cumulative injury is the case in which repeated events give rise to discrete injuries . . . . [In such a case] the damages from each discrete act . . . would be readily calculable without waiting for the entire series of acts to end. There would be no excuse for the delay. And so the violation would not be deemed continuing." (Citation omitted; internal quotation marks omitted.) Id., 837–38.

The plaintiff consistently has described the 2005 flooding incident and the 2011 flooding incident as separate incidents. During her deposition, she testified that the property damage from the 2005 flooding incident totaled $47,900, and the property damage from the 2011 flooding incident totaled $23,000. Clearly the damages attributable to each incident were "readily calculable." Id., 838. The plaintiff's claims related to the 2005 flooding incident and the 2006 installation of the backflow preventer valve are, thus, time barred.

This conclusion is supported by *Sinotte* v. *Waterbury*,

supra, 121 Conn. App. 420. In *Sinotte*, the plaintiff home-owners experienced a serious sewage backup on June 17, 2001. Id., 423. They commenced their action against the defendant three years and two months after the backup, but did not allege any further backup or event related to the sewer system that occurred after the June 17, 2001 backup. Id.,424. Their count in negligence alleged that the defendant was negligent in its construction and maintenance of the sewer system and that it should have known of the condition of the system yet failed to repair it adequately. Id. The defendant claimed that the statute of limitations, § 52-584, barred the plaintiffs' claims. Id., 427. The plaintiffs argued that the continuing course of conduct doctrine tolled the statute because the defendant's failure to remedy the threat of sewage backups constituted a breach of a continuing duty that tolled the period of repose. See *Sinotte* v. *Waterbury*, Superior Court, judicial district of Waterbury, Docket No. CV-04-4001115 (August 22, 2008). The trial court rejected the plaintiffs' argument.[19]

This court, on appeal, concluded that the trial court properly held that the plaintiffs' claims were not saved by the continuing course of conduct doctrine. "[T]he record does not support application of that doctrine in these circumstances. There was no breach of a duty that remained in existence . . . after the initial alleged wrong pleaded in the complaint: the sewage incursion on June 17, 2001. To hold otherwise essentially would expand without limit the defendant's duty toward the plaintiffs." (Citation omitted; internal quotation marks omitted.) *Sinotte* v. *Waterbury*, supra, 121 Conn. App. 440. The facts alleged in the present case, and the allegations of negligence, mirror those in *Sinotte*. Accordingly, the continuing course of conduct doctrine is not applicable under the circumstances of this case.

The defendant claims that the plaintiff's claims with respect to the 2011 flooding incident likewise are time barred by § 52-584. The defendant argues: "All of the plaintiff's claims are barred by the three year period of repose, because the last act or omission of the defendant identified by the plaintiff, the supposedly faulty installation of the backflow preventer valve, occurred more than three years before this action was instituted by service of process in 2011." The trial court agreed with the defendant and concluded that "the statute of limitations defeat[s] [the] plaintiff's claims." We disagree with the trial court's conclusion that the plaintiff's claims relating to the 2011 flooding incident are time barred.

The 2011 flooding incident is a discrete event that the plaintiff alleged was caused by the defendant's negligent acts, including, inter alia, the failure to warn the plaintiff that her property was exposed to potential sewer backflows and the failure to "properly build, maintain, construct, design, inspect, test, service and maintain the

sewer system for the property . . . ." In her opposition to the defendant's motion for summary judgment, the plaintiff included an affidavit by her expert attributing the incident to the defendant's conduct. This action was commenced approximately five months after the 2011 flooding incident. At this stage of the proceedings, we cannot conclude from the record that the plaintiff's claims with respect to the 2011 flooding incident are time barred.

### III

### CONTRACT CLAIMS

The plaintiff's final claim is that the court improperly concluded that her contract claims were actually tort claims and, therefore, time barred by § 52-584, the applicable statute of limitations for negligence claims. She argues that, as pleaded, her contract claims "are separate and distinct claims that have their own separate and distinct measure of damages."[20] We are not persuaded.

As previously noted, the plaintiff's complaint included counts that alleged breach of contract, breach of the covenant of good faith and fair dealing, and quantum meruit. All three of those counts incorporated by reference the thirty-three paragraphs in the first count, which alleged negligence. An additional allegation in the count for breach of contract provided: "At all relevant times pertinent to this complaint, the [defendant] had a contractual obligation to [the plaintiff] to maintain the sewer system for the property free from defects, utilizing its best skills and efforts and without creating risk of harm . . . ." The plaintiff alleged that those actions also constituted a breach of the covenant of good faith and fair dealing. With respect to the quantum meruit count, the plaintiff alleged that the defendant accepted payment in exchange for providing services, that the defendant received a benefit from those payments, and that it was inequitable for the defendant to accept and retain those benefits without exchange for its value. In her prayer for relief, the plaintiff sought monetary damages, punitive damages, costs and reasonable attorney's fees.

"Construction of pleadings is a question of law. Our review of a trial court's interpretation of the pleadings therefore is plenary." *Kovacs Construction Corp.* v. *Water Pollution & Control Authority*, 120 Conn. App. 646, 659, 992 A.2d 1157, cert. denied, 297 Conn. 912, 995 A.2d 639 (2010). The gravamen of the plaintiff's complaint is that she suffered personal injuries and property damage as the result of the defendant's failure to maintain, inspect and repair a sewer line in front of her property from 2005 through 2011, and that the defendant failed to properly install a backflow preventer valve in 2006. The injuries she sustained, as referenced in all of the counts directed against the defendant, were described as the "complete and total loss in her

basement," which included "[f]urnishings, appliances [and] electronics," and "severe" emotional distress resulting from her being placed at "serious risk [by exposure] to hazardous wastes, bacteria [and] viruses," making "her susceptible to disease."

We acknowledge that the counts alleging breach of contract, breach of the covenant of good faith and fair dealing, and quantum meruit, do include some language sounding in contract. Nevertheless, reading the complaint in its entirety, it is clear that the liability of the defendant to the plaintiff, if any, is based on principles of tort law. As stated in *Gazo* v. *Stamford*, 255 Conn. 245, 262, 765 A.2d 505 (2001), "the plaintiff may not convert that liability into one sounding in contract merely by talismanically invoking contract language in [her] complaint."

In the present case, the plaintiff is requesting tort damages, not contract damages. She expressly seeks compensation for her emotional distress and for medical conditions described in her deposition testimony that she claims were caused by her exposure to the raw sewage. "The usual recovery for breach of a contract is the contract price or the lost profits therefrom"; id., 265; whereas a cause of action in negligence arising from tortious conduct "subjects the tortfeasor to responsibility for the payment of money damages for the injuries sustained by the plaintiff because of the tortious conduct . . . ." (Internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 299, 87 A.3d 534 (2014). "[W]hen the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading." (Internal quotation marks omitted.) *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 783–84, 887 A.2d 420 (2006).

"Just as [p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender . . . putting a contract tag on a tort claim will not change its essential character." (Citation omitted; internal quotation marks omitted.) *Gazo* v. *Stamford*, supra, 255 Conn. 263. "The law should not permit [a plaintiff] to recast what is essentially a tort claim as a contract claim solely to gain the potential advantage of a longer statute of limitations." Id., 266. "[W]here . . . the plaintiff's allegations of both liability and damages sound in tort, and the only practical effect of permitting a contract claim to lie would be to extend the tort statute of limitations, and common sense strongly counsels otherwise, the plaintiff may not be permitted to transform his tort claim into a contract claim merely by alleging that it is such a claim." Id.

For the foregoing reasons, we conclude that the plain-

tiff's allegations sound in tort rather than in breach of contract, and that the trial court properly determined that § 52-584 was applicable to the plaintiff's claims.

The judgment is reversed only with respect to the plaintiff's claims that the defendant was engaged in a proprietary function in the operation of its sanitary system and that her claims relating to the 2011 flooding incident were not time barred, and the case is remanded with direction to deny the defendant's motion for summary judgment with respect to those claims and for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The town of West Hartford (town) also was named as a defendant in this action. The town filed its own motion for summary judgment with respect to the counts directed against it. The court rendered summary judgment in favor of the town on January 27, 2014, and the plaintiff has not appealed from that judgment. Because The Metropolitan District is the only defendant involved in the present appeal, we refer to it as the defendant in this opinion.

[2] The court also heard the town's motion for summary judgment at the January 27, 2014 hearing. See footnote 1 of this opinion.

[3] No separate memorandum of decision was issued by the court.

[4] On January 27, 2014, the same day as the argument on the motions for summary judgment, the court sent the following computer generated notice to the parties advising them that it had granted the town's motion for summary judgment: "Under Connecticut General Statutes [§] 52-557n, the town of West Hartford has immunity because its actions or lack of action are discretionary and there is no evidence that the plaintiff was an identifiable person subject to imminent harm. In addition, the negligence and results thereof, of 2005, have been conceded by the plaintiff as violative of the statute of limitations under [§] 52-584. The court finds that the contract claims are in reality negligence claims and the 2006 defect violates the statute of repose in [§] 52-584. Contrary to the plaintiff's claim, the actions of the town are not proprietary. Finally, there is no evidence that the town was required to supervise the [defendant]. Plaintiff has cited *Considine* v. *Waterbury*, 279 Conn. 830, [905 A.2d 70] (2006), to the effect that a municipality is engaged in a proprietary function and is, therefore, not entitled to immunity. However, this case is not applicable because the revenue is used only to pay *current and long range expenses*, which is not to produce pecuniary profit." (Emphasis added.)

At the January 27, 2014 hearing before the court, the defendant's counsel had argued that *Considine* was distinguishable from the present action: "[I]f the income derived from the activity substantially exceeds any expenses, such as rent and occupational cost, then it's proprietary in nature. If, however, the revenue generated from the activity is only used to pay *current and long range expenses* involved in operating the activity, this could indicate that the primary purpose of the activity was not to produce a pecuniary profit." (Emphasis added.) None of the supporting documentation submitted by the defendant with its motion for summary judgment, however, stated *how* the defendant's revenue is expended. One affidavit, signed by the defendant's manager of customer service, averred that the defendant "is a nonprofit, political subdivision which maintains approximately 1400 miles of sewer and approximately 1600 miles of water mains throughout the city of Hartford and the surrounding towns including the town of West Hartford." This reference to the defendant's nonprofit status is the only statement that approaches an issue that could be considered financial in nature.

[5] General Statutes § 52-557n (a) provides: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages

resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[6] When a municipality is engaged in proprietary conduct, it "is not clothed with [the state's] immunities and is liable to be sued for injuries inflicted through its negligence in the performance of such an act." (Internal quotation marks omitted.) *Mazurek* v. *East Haven*, 99 Conn. App. 795, 798, 916 A.2d 90, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

[7] The only reference to the defendant's financial situation is contained in the affidavit of the defendant's manager of customer service, which states that the defendant is "a nonprofit, political subdivision . . . ."

[8] In this appeal, the defendant argues that the plaintiff's proprietary function claim "is not properly before [this] court" because (1) "the plaintiff did not plead special corporate profit or pecuniary benefit in the complaint" and (2) the plaintiff did not plead "this exception to governmental immunity in avoidance of the [defendant's] special defenses." We do not address the second claim because the defendant did not raise it before the trial court. See *Cedar Mountain, LLC* v. *D & M Screw Machine Products, LLC*, 135 Conn. App. 276, 293, 41 A.3d 1131 (2012).

With respect to the defendant's first claim, "[c]onstruction of pleadings is a question of law. Our review of a trial court's interpretation of the pleadings therefore is plenary." *Kovacs Construction Corp.* v. *Water Pollution & Control Authority*, 120 Conn. App. 646, 659, 992 A.2d 1157, cert. denied, 297 Conn. 912, 995 A.2d 639 (2010). The statute at issue, § 52-557n (a) (1), provides that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages . . . caused by . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit . . . ." The plaintiff was not required to use those precise words in her complaint. By alleging that she, as the defendant's customer, paid the defendant for its sewer services, the plaintiff sufficiently apprised the defendant of its claim. Moreover, the plaintiff clearly put the proprietary function claim at issue when she filed her opposition to the defendant's motion for summary judgment. The defendant, in its reply to the opposition, responded to the plaintiff's proprietary function claim, although it filed no additional documentation that indicated how the defendant's revenues were expended. When the court ruled on the defendant's motion for summary judgment, it considered the plaintiff's proprietary function claim and rejected it in the notice of its ruling. Accordingly, we conclude that this claim is properly before us on appeal.

[9] As discussed in footnote 4 of this opinion, the defendant's counsel made the statement about the defendant's revenue at the January 27, 2014 hearing. The defendant submitted no evidence to support that statement in its motion for summary judgment, in the documentation submitted with the motion, or in its reply to the plaintiff's opposition to its motion.

[10] In footnote 13 of *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 55 n.13, our Supreme Court stated: "[T]he plaintiff failed to produce any evidence demonstrating the existence of an inextricable link between the [Metropolitan District Commission's] allegedly negligent supervision and maintenance of the trail on which the plaintiff was injured and the [Metropolitan District Commission's] proprietary maintenance of the property for purposes of preserving water purity."

[11] In footnote 6 of *Blonski* v. *Metropolitan District Commission*, supra, 309 Conn. 290 n.6, the court noted: "In addition, we observe that the defendant appears to have adopted the plaintiff's dual characterization of its functions—those in relation to its supply of water being proprietary and those in relation to its provision of recreational space being governmental— although it disagrees as to which function the plaintiff's allegations of negligence relate. The defendant therefore has [not] challenged this court's prior decisions that the supply of water is proprietary whenever revenues are generated thereby . . . ." (Citations omitted.)

[12] We do not consider the comment of the defendant's counsel at the January 27, 2014 hearing to be evidence that the defendant's revenue generated from its sewer operation is used only to pay current and long range expenses. "This court, as well as our Supreme Court, repeatedly has stated

that representations of counsel are not evidence. See, e.g., *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993), overruled in part on other grounds by *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 309, 852 A.2d 703 (2004); *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985); *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006); *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 345, 876 A.2d 593 (2005); *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001); *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 26, 783 A.2d 1157 (2001); *Constantine* v. *Schneider*, 49 Conn. App. 378, 397, 715 A.2d 772 (1998); *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 562–63, 699 A.2d 305 (1997)." (Internal quotation marks omitted.) *Dionne* v. *Dionne*, 115 Conn. App. 488, 493–94, 972 A.2d 791 (2009).

[13] If it is subsequently determined that the defendant was not engaged in a proprietary function in the operation of its sewer system, it then becomes critical as to whether the alleged acts of negligence were ministerial or discretionary in nature for purposes of governmental immunity.

[14] In her appellate brief, the plaintiff makes the additional argument that "[p]ublic policy concerns dictate abrogating government immunity in this case." The plaintiff fails to cite any case law that supports this claim, and we conclude that it is without merit.

[15] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[16] It is not necessary to determine whether the action should have been commenced within two or three years because the plaintiff's claims for the 2005 incident, and the installation of the backflow preventer valve in 2006, are barred using the maximum allowable three year limitation period unless the period is tolled by the continuing course of conduct doctrine.

[17] The trial court did not expressly address the plaintiff's argument with respect to the continuing course of conduct doctrine, even though the parties briefed the issue and argued it at the January 27, 2014 hearing. Nevertheless, it can be concluded that the court rejected that argument because it held that § 52-584 barred all of the plaintiff's claims.

[18] Similarly, at the January 27, 2014 hearing on the defendant's motion for summary judgment, the plaintiff's counsel stated that "[t]he continuing course of conduct was the defective sewer that remained defective from 2006 throughout 2011."

[19] According to the trial court, "[t]o hold that the city's mere operation and maintenance of the sewer line constitutes a 'continuing course of conduct' to toll a limitations period indefinitely would obviate the repose periods of [General Statutes] §§ 52-577 and 52-584." *Sinotte* v. *Waterbury*, supra, Superior Court, Docket No. CV-04-4001115.

[20] A six year statute of limitations applies to contract claims. General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." The present action was commenced within six years of the 2005 flooding incident.